We'll hear from the last case on our calendar, our argument calendar, that is Wells Fargo Trust v. Synergy Group Corp. Let's hear from the appellant, Synergy. Thank you, Your Honor. David Gorovitz for Synergy Group Corp. Can you hear me well? Yes. Thank you, Your Honor. May it please the court, this is an appeal from a summary judgment grant. And naturally the question, key question is whether there are issues of fact. We submit that there are many issues of fact. Insufficient evidence on the part of plaintiff claim, in fact, fail as a matter of law. The case is about some guarantees of some aircraft engine leases to a Brazilian company. There is no dispute that the guarantee is in place and that there hasn't been payment. The dispute centers on the amount of the debt guaranteed and whether some of the whether the guarantee is invalid because of some illegal penalty provisions in the underlying leases. The district court identified six categories of damages under the leases that the guarantor must pay because of the breach. And we submit that there are significant issues of fact with regard to virtually all of these categories of damages that the district court overlooked. Just to give you a few highlights, the defendants, an executive who assisted with the management of the debtor submitted affidavits stating that there were some deposits that had not been counted, that had not been given credit as against the late rent payments and as against the depreciation and of lease payments, the affidavit. Are you talking about the Welch declaration? The yes, the Welch affidavits. Let me ask you about that. He didn't assert that he had personal knowledge. So why did the district court error in not giving that any weight? He didn't actually say, I mean, isn't that easy? It seems like lawyering 101. You just put in your affidavit. And I have I have personal knowledge of the following facts. I didn't think that was in there. Are you talking about Richard Welch? The Welch affidavit on page three or four. Would you address that? Because honestly, it seems to me that a lot of these issues came down to the affidavits, the form of many of these affidavits. And maybe maybe Mr. Welch did have personal knowledge. But as I recall, it didn't allege that he did. And it just started. He said, I mean, I could give you an affidavit, said I prepared the following spreadsheets. But he didn't say I prepared them based on business records or I prepared them based on my personal knowledge of what's in there. And if you don't have that allegation, aren't you missing a key factual allegation? But again, this is one of one building blocks of your evidence. Am I missing something or did he allege personal knowledge? Well, he said he helped manage the he did with the management of the lessee and the executive director of an executive director who assisted the management. I mean, an executive director of a company. I don't I mean, people give all sorts of titles to all sorts of jobs. I don't know. That means he has personal knowledge. Maybe he does. But aren't we just left wondering? Well, let me say this. He did say that that he was the executive director. He did say that he put together these spreadsheets. That's standard is going to be applied to him. It should also be applied to. Who actually said not only didn't have personal knowledge with respect to some of these. I'm reading the Flaherty affidavit on page 281 of the appendix. And he said based on his personal knowledge. And records of Willis Lease. That's one of the actual basis for what he's about to tell us. That's one of them. But there's also the blockade affidavit where he says specifically that it's on information and belief. And that's a significant category. With your with your opponent. But Flaherty versus Flaherty versus Welch. There's two different two different two different categories. And he he does not specifically say that he has personal knowledge. He says he was involved and he says that he put together this these spreadsheets. He does not say personal knowledge. He does not specifically say personal knowledge. How does he say generally? I mean, how else do you say it other than specifically? He says he says, I manage the the debtor and I put this together. I put together this spreadsheet. May I turn to the question of mitigation? Because that's one of the arguments that you make. And it's true that there are New York cases that say that unless there is a duty to mitigate, you can't. These things are penalties. But here there was a duty to mitigate. There's an odd duty to mitigate because it wasn't a duty to resell these things. But isn't that enough to get by? And then the question of what that that gets tried out later. That is, I mean, New York's a bit odd on that because it does say understandably that if there is no duty to mitigate at all, then these are penalties. But here there was a duty to mitigate. Well, it specifically said it didn't have to resell it. Is that enough? I don't think so, Your Honor. It says that it doesn't have to resell or release. In fact, it specifically says it could just sit on the engine. It could it could hold it and idle it. Well, no. They might have to repair it, do various things with it. But is that again? It may be that later it turns out that these are not adequate damages, that the damages are not there because they could have done more. But isn't that enough to get by the notion that this isn't just a penalty? Again, I don't think so, because the the bill I see here and the guarantor by extension has to pay all the rents and has to do all the. Giation and repairs. So it has to give them the engine in the same state that it that it got it. It has to pay all. Let me ask you about another thing. There does seem to be a $17,000 issue on which there may have been double payment. Is that worth our while worrying about it all in this case? If that is the only error we find, are you really going to go back and try this whole thing for $17,000? Or is that just something we can ignore? I would submit it's a far, far more significant issue. No, no. I know that you argue it's the 13th stroke of a crazy clock, which is not only wrong in itself, but cast out and everything that has gone before. But assume we don't buy that and just think it is that $17,000. Do you want us to do something about that or not? Well, if the references to the fees, you know, certainly we don't concede that the legal fees should have should have been awarded without some evaluation of reasonableness. I'm exactly catching where the 17 comes from. I thought it was a little more. But so you've reserved three minutes for a bottle. Otherwise, your time has expired. We'll hear from Wells Fargo. Good morning, counsel. Good morning, your honors. May it please the court. Judith Archer representing Wells Fargo as owner trustee. This is a straightforward action to enforce amounts under a guarantee, and many of those amounts have been admitted and undisputed by the by the appellant. As the district court correctly held, a summary judgment was appropriate and damages were awarded in the amounts of 13.5 million and 49,000 euros plus attorney's fees and prejudgment interest to be determined. Now, appellant below conceded liability. They stipulated that the guarantees are absolute and unconditional, that the underlying debts were outstanding and that the appellant as guarantor had not performed. So the only issue was the amount of damages to be decided by the district court. Now, the district court's ruling appropriately found that the appellant had failed to meet its burden to show that the liquidated damage provision at issue was an unenforceable penalty. Specifically, the district court found that it was a reasonable amount in conjunction with the damages to be suffered and that appellant's damage theory would leave the appellee substantially worse off than if the lease had actually been performed. As the district court noted, it effectively resets the parties to the state of play before the contract. So, just to lay out, specifically, there were a variety of categories of damages that the district court awarded. The first, past due rent and use fees. Appellant conceded that the appellee is entitled to the past due rent and the use fees. The only challenge was with respect to certain amounts. The Welsh affidavit and then... Can I ask you? Yes. You can come back to the Welsh clarity duel later. But what about the Pulikides one? I mean, what's good for the goose is good for the gander. If we're going to fault one side for not alleging personal knowledge, shouldn't Mr. Pulikides' affidavit be faltered because it didn't track Rule 803? In terms of the foundational allegations for business records. I mean, that's just Lawyering 101. These were records made at or about the time of the events that occurred. They were made by people who had knowledge. None of that. He just said these are true and accurate copies. Your Honor... Right, maybe they're true and accurate copies of hearsay, right? You didn't get overheard. Mr. Pulikides, the general counsel of Willis, which is the servicer, did actually specify that his affidavit was based on personal knowledge. Unlike Mr. Welsh. Personal knowledge means what? That's not enough. If I get up on a witness stand to authenticate documents as a custodian of record, I don't just say, do you have personal knowledge of these documents? Yes. Are they true and accurate copies? Yes. Admit it. That's not how it works, right? Your Honor, they're true and accurate copies of invoices received from vendors and repair personnel to Willis for use with respect to the inspection and repair of the engine. So they weren't Willis documents themselves, but they were invoices that Willis received. And Mr. Pulikides did, in fact, specify the reasons for the invoices. He described the services that were performed based on his personal knowledge with respect to the engines being inspected and repaired, certain parts being replaced. So you're saying that because these are records, these are invoices, these would be the recipient of the invoice. Yes. It was enough for him to say, to establish the business record exception, that they had been received. I mean, they could be true, they could be false, whatever, but they were received and therefore they had to be paid. And therefore, you can lay a foundation to the business record exception sort of more economically than you might otherwise. Because the fact is they were received. You're not testifying to the accuracy of the person who composed the record. That's right. He testified to the fact that they were accurate copies of the invoices that were received for the services that were performed on his personal knowledge, on the review of the books and records. So he couldn't have said these are kept in the ordinary course with respect to the person who sent them. But he could have said that with respect to Willis, right? And we generally, when you lay a foundation, you would say, and it is the regular course of business or whatever, in the ordinary course of business at Willis, we maintain these records, right? Well, I believe that that actually comes through in his declaration in any event. He's testifying about the process for the inspection and the repair and the various vendors that perform the work as part of Willis' work in refurbishing these, I'm sorry, repairing these engines once they had been received after many months. So you're saying, using the magic words of 803, that his allegations about where these numbers all came from or the context in which they were invoiced effectively in different wording covers those requirements? We believe they do, Your Honor. And the district court, in its discretion, accepted the declaration. The only challenge that was made to the declaration was the words information and belief were plucked out and the personal knowledge and books and records were ignored by the appellant. But Mr. Poulakidis describes in detail the various documents and the costs that were associated. We believe that's absolutely sufficient and that the district court did not abuse its discretion in accepting Mr. Poulakidis' affidavit with respect to the inspection and repair costs. As opposed to... Counsel, could you address the duty to mitigate and whether it was adequate under New York law? We believe because this is the provision relating to the return of the engines, whether or not it's returned, what damage calculation applies, in which case, here, the engines were, after long last, returned. But the appellee still was owed future rent with respect to the amounts of rent that would and should have been paid absent the default through the end of the lease discounted for present value. Further, they had a duty, as Judge Calabresi suggests, to mitigate the future rents by refurbishing and reselling or re-renting the engines. That is correct, isn't it? So the contract does not require that Wells Fargo and Willis actually sell or lease the engines. But if they do sell or lease the engines, then any amounts received pursuant to a formula set forth in the lease that Synergy, that Avianca Brazil agreed to, then those are deducted, they're offset. Basically, your argument has to be that while there is no duty to resell or re-rent, there is a duty to mitigate, and that gets you by the initial notion of whether this is a penalty. Then in assessing damages, an argument can be made that they did not adequately mitigate because they didn't do some of the things that they could do. Is that what your argument is? Well, honestly, the argument wasn't that Wells Fargo or Willis didn't do anything to mitigate. They received the engines late, they repaired them, they set them up. If they release them or if they sell them, then those would be offset against the damages. But the amounts still needed to compensate for the benefit of the bargain loss are the amounts of future rent, which was clearly reasonable in relation to the damages suffered. So that rent, the future rent, would be offset for any future lease payments or sale payments. That hasn't happened. And there's nothing in the record that the appellee has done anything inappropriate in terms of how it has conducted itself. Has there been an argument by your opponent that you, in fact, failed to mitigate? No. What our opponent says, the appellant says, is the fact that there isn't a specific duty to mitigate, the fact that they agreed that there wasn't a duty to mitigate, makes this an unenforceable penalty. They don't say that we didn't. They don't say that you failed to mitigate. They go to whether this is a penalty. Exactly. And we don't believe it is. And that's a significant difference in New York. Yes. Unlike many of the cases cited by appellants, this is not a static value. This is not a situation where we would receive the entire value of the planes, of the engines, plus rent to the end of the lease. We're talking about future rent. We're talking about end of lease payments that actually just reflect depreciation and that the district court below accurately found the appellant agreed to as a shifting of the burden there and the risk of depreciation. And those aren't duplicative amounts. And in addition, the costs with respect to repair and refurbishment, I see that my time is close to ending, but just to turn quickly with respect to the issues of fact, as opposed to the Flaherty and the Pulikides affidavits, which were on personal knowledge and were very detailed and specific with evidence, neither of the Welsh declarations explained why they disagree with the amounts. The only amounts they took issue with were the rent and use fees. There were no invoices attached. There was no explanation for why Mr. Welsh's figures were triple in the second affidavit as opposed to the first one. There was no explanation given, for example, that we didn't count one of the months that had actually been paid or that inspection costs were not reasonable or that there were fees that shouldn't have been incurred. None of that was raised. I mean, it was purely conclusory in both of the Welsh declarations. And Mr. Vianna started discussing industry practice with respect to end of lease fees. But there was no claim that the contract was ambiguous. Industry practice does not get admitted unless the contract is ambiguous. There was not even any argument. It's unclear what Mr. Vianna was trying to say. We understood him to be indicating that perhaps he thought the fees were not accurate. But again, there was no evidence. There were no documents. There were no specifics. And we believe the court appropriately held below that there was no issue of fact raised by the appellant because all they provided was conflicting, unsupported, conclusory, unexplained statements and calculations. Thank you. If your honors have no other questions, I recognize that my time is up. Thank you. You've retained three minutes for rebuttal, Mr. Gorvitz. The floor is yours. Thank you. Mr. Gorvitz, I'm going to immediately ask you a question, which is, did your side raise an 803 objection to the Pulakitis affidavit before the district court? I believe we challenged the Pulakitis affidavit as being non-evidential. Specifically, did you charge it as failing to adequately satisfy the 803 exception, the records of regularly maintained business records, that specifically? Did you raise that particular challenge? I understand you challenged it in other ways, but did you argue that he didn't satisfy the business records exception? And if you did, could you give us a citation to the record where you did that? I cannot. I do not recall if we made that specific objection. Why don't you do this? After argument, don't take time now. You can send us a letter and then counsel. Perhaps you could do the same thing with the permission of the presider. If you find a place in the record, send us a letter just indicating whether you did or not, and if so, where the citation to the record was. Sure, absolutely. I want to point out that aside from the duel, as Judge Nardini described, the Welch versus Flaherty situation, there are other self-contradictions and contradictions in plaintiff's evidence that simply cannot be overlooked. There are some statements that an inspection had not been performed by the defendant or the debtor and needed to be performed by the plaintiff, resulting in hundreds of thousands of dollars of charges. There was another letter saying it had been performed. On top of that, they had an affirmative duty to demonstrate that these repair and maintenance costs were reasonable, necessary, and non-duplicative of the routine maintenance that had been paid for by these depreciation fees. That is not done there, and the fact that Mr. Pulikides submits his affidavit on information and belief in addition to personal knowledge is part of that. Not only does he not necessarily lay the foundation for these documents, he cannot possibly say that these charges were reasonable and non-duplicative. In fact, some of these invoices that you had look like they relate to routine maintenance. So that big category of damages is very much subject to an issue of fact. I rest for any other questions. Thank you. Thank you both. I will defer to Susan on this matter. That's the last case on our calendar, so I will ask the clerk to adjourn the court.